in number 2012-3094 Denney v. OPM What were you thinking over there, huh? I don't know if there's anyone there. I don't know if there's anyone there. Oh, yeah. Mr. Zwick, when you're ready. Good morning. Good morning. If it pleases the court, my name is Richard Zwick. I represent the petitioner's case, Sherry Denney. Ms. Denney retired from her job as an FBI agent in December 2008 after working 25 years as a federal law enforcement officer. We're really very conversant with the facts, so you can get right to the issues you want us to focus on. Well, I think we have to start with the statute because there's a question of what her retirement ought to be. And the starting point, I believe, is in 5 U.S.C. 84-15-G1 now, F1 as we talked about in the briefs, which requires that we first determine the annual rate of basic pay that would be payable for full-time service and position. Right. And the answer to that is in 5 U.S.C. 83-31, which says that basic pay includes a number of things, including availability pay received by a criminal investigator under Section 5445A. I hope I said that right. 5545A of this title. And 5545A goes on to describe the circumstances that a federal law enforcement officer should not be able to get. And is your argument that received by, what do you think those words mean? If they don't mean she actually had to receive the money? What it means is, what do we mean by availability pay? In other words, it's describing the pay that's involved. Received by is not a limitation. It's a description. For example, you could have someone who was a paralegal in some agency, and the agency thinks, you know, we need to have you available more than just 40 hours a week. We're going to pay you more to be available. I think it happens, people that are driving trucks maybe, and they call it availability pay. And then when it comes time to determine the basic pay, they add this in, and they're saying not that. But not all criminal investigators who work full-time get availability pay. In fact, as I understand it, Miss Denny, who did work full-time between May 20th and August 26th of 2001, nonetheless did not receive availability pay during that time. All FBI agents receive availability pay except in just really, really unusual circumstances. Well, it's not automatic. They have to be available to work an extra two hours a day. Right? It's not just – it happens 90 – They have to certify it. It happens. They have to certify that they're available to do that work if it's needed. And if they're not available, they won't let them be FBI agents. 99.9 – Well, she worked for three months and didn't receive availability pay, so there must have been some reason she didn't certify that she was available to work during that time. She had limitations on her, and I think that's why she ends up going part-time. But they would not – the FBI won't let you work 40 hours a week as an FBI agent. You have to work – you have to have this availability pay. If you're not able to do that, they won't let you be an FBI agent. The reason is – Well, she continued to work, right, at part-time. But she went part-time. They don't like to let people go part-time, but they let her go part-time, and then she doesn't get it. But the availability pay is a condition that an FBI agent has to meet to be an FBI agent. But I don't see that anywhere. I don't see that – Well, it's in the literature about the FBI. I don't know. I've been thinking that if we have a finding here based upon the three months when she didn't actually get it, when 99.9 percent of the agents do get it, we would be doing a great disservice. Maybe there needs to be a remand or something to determine that, but it's not necessary. I think the literature makes it clear that FBI agents are expected and are required to be available this extra time, and the FBI will not let people be an agent if they're not. In her case, it was for a very short period of time, and it was based upon some limitations she had. She ends up satisfying that by going to part-time. They have to approve her to go to part-time. They don't always approve that. And just so I understand the facts right, at the part-time level, she was making more money per hour than she was at full-time. Is that right? They choose your three highest years of basic pay to come up with the annuity or pension. Isn't that right? Well, the average pay is based upon the basic pay for the highest three years. Highest three years. And that ends up being the last three years. So she must have been making more per hour as a part-time employee than she ever did as a full-time employee. Is that correct? Because they chose those three years. But that's true of every federal employee. The years that they pick to set their pension are more than they've made in the past year. Well, let me see if I understand. Correct me if my understanding is wrong. What I understood to be the case is she was full-time and getting availability to pay. And getting raises and so forth. And then she goes part-time. She doesn't get availability to pay. But nonetheless, multiplying her part-time pay level times whatever the factor is if she was working half-time, doubling it, her raises led her to the point that her actual salary was greater for those three years than it would have been or was during the time she was working full-time with the availability pay. Isn't that right? I have those numbers here. Well, I mean, I assume that's the reason that we're here is because if she made less during the time that she worked part-time multiplied by two or whatever the factor was, she'd just go back to the type three, which is the previous number. But, in fact, she was making more, but not as much more as she would if you added the availability pay, right? Are you with me? Not exactly. Not exactly. All right. Let me see if I can explain it. And if I don't have it right or don't satisfy you, you can ask me some more. When they set the availability pay, they looked at what a full-time pay would be. No, when they set her pay, what full-time pay would be on the last three years? Now, she didn't work. Not the last three. The high three. Which happens to be the last three. Happens to be. And that's my point. The reason it happens to be her high three is because it's still higher when you multiply the factor. No, no. That's not right. It isn't. No, because they don't do it that way. Wait. So, her last three years are 99 through 2001. 99, 2000, and 2001 at full-time, right? Yes. Okay. And that's when she was receiving availability pay? Yes. Okay. So, was her salary with the availability pay more than what the annuity pension is calculated to be? Meaning, I'm wondering if they used the wrong three years. You're saying availability pay jacks your salary up because it's making yourself available to work. And so, I'm wondering, is she getting more money by using whatever hourly rate she was paid as a part-time employee times full-time than she would have if you had used the last three years when she was full-time with the availability pay? I don't know. I have to look at it. I assume she has to be, right? Otherwise, they go back and pick up the old three years. They have to choose the high three years. Well, I guess in a period of eight years, it's a good chance that the pay raises are more than 25%. Sure. That's the point. And so, I guess, so my question to you is, so she is receiving this amount that's calculated based on the largest hourly rate she's ever gotten in all of her years of federal service. And I don't mean just the hourly rate. I mean even if you take into account the hourly rate she was getting in 2001 with the addition of the availability pay. She's getting the highest possible pension equivalent to anything. She's never made more money in her federal service than she's getting through this pension by using these high three years. So, why aren't you really asking for a windfall? You're saying give us her present day highest hourly rate plus the availability pay even though she wasn't getting any availability pay during this time. You're asking for an hourly rate that's higher than anything she ever got during her federal service? Every federal employee gets that. No, they get their high three years. No, but you're talking hourly rate. Every federal employee gets the highest hourly rate. No, it's basic pay, which includes availability pay. So, it's hourly rate plus availability pay. Which is just 25% more. Right. I don't really, okay. Every federal employee gets their high three, which turns out to be their last three. Mostly. Mostly, all right. Well, you know. Think about it. In her case, suppose she was full time two years ago and earning availability pay. She was getting 125% of the hourly rate. 100% plus the 25%, right? Yes. A couple years ago. I'm with you. Now, she goes part time. She's not getting availability pay and the step increases are small, but they don't increase to over 25%. So, her high three years would be the full time years when she was also getting the availability pay because of the availability pay, even though her hourly rate had gone up as a part time employee. Nobody looked at it that way when they calculated and they don't look at it that way. I feel like you're asking for a windfall. Let me tell you why I'm not. All right. The changes were made when the FERS was passed that are in G8313. 8415G? Yes. Yeah. They deal with how you handle part time pay and how you handle it as you prorate it. And you get your pension calculated on the high three that you would have gotten if you're full time. And if you just forget about the availability pay. The question you're asking would be the same question. But the high three that you would have gotten if you're working full time. And that's the... You can't forget about availability pay because the statute, as you pointed to, says in determining the high three... You count them up. You can't only pay when received. See, but what I'm telling you is your problem about she's getting a windfall because she's getting her pension calculated based upon a rate that she never got as a full time employee. That's taken care of by the prorating. If you... In B. Pardon me? I'm sorry. Yeah, B. In B. I'm sorry. I don't understand how it's taken care of. You're asking for her highest hourly rate, which was something she got as a part time employee when she was not earning availability pay. And then you want to add in the availability pay on top of it. So that would make her 125% of her highest ever hourly rate. Which is what she would have gotten if she had been working full time. And then... But she never did work full time and get that amount of money. So you're asking for an amount of money for her pension that she never, ever got in the federal employee rate. Well, look at it this way. The way it's done, the way it's done, she gets nothing. Nothing for the time that she got availability pay. Well, she would have if those were the higher basic rates. But she doesn't. She's being penalized because she worked part time at the end. If she had worked the last three years full time instead of some earlier time, then her pension would be entirely different. It would be 25% more. Well... Let me see if I... It wouldn't necessarily be 25% more because the fraction that you use to set part time could be different. But it would also, if she had worked full time at the end, she would have had to certify and be available for the availability. She would have. She did. She did for 18 years. It's only three months out of 18 years that she did. Let's go back, if we could, to the language of the statute. And I have a couple of questions if you're... Go ahead. Looking at G1A, you started with the critical language, and I agree that that does seem to be the critical language. It shall be determined by using the annual rate of basic pay that would be payable for full-time service. Now, focusing on the words for full-time service, why doesn't that mean the basic GS scale that you get for being a 40-hour-a-week employee, as opposed to calling full-time service, service plus premium pay? Well, it's in the definition of basic pay. Well, it is in the definition of basic pay, but that doesn't necessarily mean that the annual rate of basic pay that would be payable for full-time service means the same thing, it seems to me, as what items are included in basic pay if you happen to receive them, right? Well, but that's not what this statute says. It defines basic pay as including AVP. And I think the real unfairness about this is that when she worked and got AVP, she paid contributions on that. She's not going to get anything for the time she worked AVP, the way this thing's set. And it's just an anomaly because she worked AVP at the end of her career instead of in the middle of her career that Congress can't attend that. The reason that they put this formula in to parade it is to, one, keep the agencies from having to pay for what they didn't get, and two, to give the employees full compensation for what they did work. She had a 50-hour week for 18 years as an FBI agent. She had a 20-hour week as a part-time employee for the last seven. Suppose that the facts were different. Suppose that she worked for one year full-time with availability pay. Then she had a 30-year service part-time. Well, let me tell you, they wouldn't let her do that, but I'll answer your question. I mean, the statute allows it. Whether the agency would or not is irrelevant to whether that could happen under the statute. So why in the world would that employee, who I just described hypothetically, why should that employee get, as an annuity, the availability pay? They wouldn't. They wouldn't, but they would. They shouldn't, but under the statute, if you interpret it the way you want us to, they would. No. If you prorate it, they won't, because what you're going to do, you're going to say she has basically a 50-hour week. So she worked 50 hours year one, 40 hours all the rest of those years. You add up the time she actually worked. That's your numerator. You add up the time she could have worked. That's your denominator. So you're going to discount her annuity by about something close to 80%. You're going to give her close to 75%. You're going to discount it by 25%. And that's what Congress set up here. And so it's a two-step process. You have to decide what the basic pay is. The basic pay is defined by the statute, and it includes availability pay. And that's what full-time FBI agents get. And that's what she got when she was a full-time FBI agent for all but this little period that is an anomaly that doesn't happen with FBI agents or any law enforcement people. And there's no infall because you're going to discount the amount of her pension. But prorating occurs after you pick the high three years. Yes. So if in my hypothetical there was one year where the person worked full-time and got availability pay and then a 30-year part-time career, you would still be arguing, or at least your interpretation of the statute would result in us saying, well, the high three years are the three part-time years, but we've got to add on the availability pay. Well, I wouldn't be saying that. I know you wouldn't come in here and argue that, but the problem is you're arguing. No, I would still have the same position. I just wouldn't say it that way. And my position would be that the basic pay is still the basic pay, which includes AVP. And even for this employee that only worked one year of it, and that was her first year and she never worked it again, it's not going to be a windfall because the prorating will cut out the windfall. That's what the prorating is for. And the number you use to apply the prorating to, you're doing a double adjustment. You're adjusting the basic pay first, and then you want to prorate it. That's not what Congress has in mind. And the purpose of it is you set the basic pay the same way you do for every other FBI agent, and then you prorate it because of the part-time employment. The way it's done here gives her nothing for the fact that she worked AVP, nothing. If she had worked the whole career at 40 hours and then just 20 hours the last seven years, she gets the same effect pension she's getting now, nothing for the AVP. Congress can't have intended that. The prorating fixes it. I think when you talk about the term basic pay, it has to mean the same thing in different places. It's defined in the statute to include AVP. Now, when they can collect the contributions for the pension fund, they collect it against the basic pay, and that includes the AVP. That's why when they pay the pension, you're going to use the AVP to pay the pension. If you don't include it in the basic pay, what's the point of prorating? Wait, wait, wait. What's the point of prorating? Well, the point of prorating is that you bring the person up and the huge benefit she gets from going from 20 hours to, in effect, being treated as a C work worker. No, no. What I'm saying is you wouldn't need to do that. You just would make the basic pay. You would calculate this average out so there wouldn't be a need to prorate. That's what used to happen before the statute got changed in 1986. Wait, wait, wait. Suppose that she hadn't gotten any raises. Well, let's suppose there were no availability pay at issue, and that's going to be the great majority of these kinds of cases. All right, so the benefit, I take it, to her is that, or to a person in her position who isn't eligible for availability pay and was never eligible for availability pay, is that if she's working, say, her last three years at a higher GS level than she had before but is only working part-time, she gets treated as if she was full-time at that GS level and, therefore, those three years, even though part-time, are going to be her high three at the full service level, correct? Yes. Right. So that's the real benefit of this statute for the vast majority of federal employees who work part-time. She's in a very peculiar sort of small niche in which she's gotten the major part of the benefit, the one I just described, but is saying, I didn't get the full benefit because I'm being treated as if I am only getting 80% of my full-time salary. That's right. I mean, I think we start with the statute, and the statute says you use the basic pay. Then you go to the other statute that tells you what the basic pay is. Then you calculate the pension. Now, I think, as Judge Morris suggested, that it is worthwhile to see, is there a windfall here? My answer to that, there is a windfall because you prorate out. By prorating the part-time thing, you get rid of her getting paid unduly for the pay. But if you don't do it this way, there's a penalty because she gets no credit for her time, that she worked 50 hours a week. I think it's a simple thing. These last seven years, she's going to get 40% of the pay for those years. Well, 40%, that'll go into the fraction. That takes care of it. I think it was in the Killeen case where they tried to do that. They want to adjust the basic pay down to reflect the part-time and then apply the ratio. You don't do that. That was the example. I mean, that's the example I just used. And we agree that the statute clearly doesn't allow that. Right, but that's essentially what happened here. That's the question. Well, I think it's significant that, and I'll sit down if I finish this thing. I think it's significant that in coming to its ruling, the board and OPM have inserted the word actually. The word actually isn't in the statute. And the reason the word actually isn't in the statute is it's not – the pay to law enforcement folks is not intended as a limitation. It's just a description. It's talking what kind of availability pay we need. Okay. Thank you. Ms. Whitman, if I may. Yes, ma'am. Good morning, Your Honors. May it please the Court. I think the easiest way to illustrate that Ms. Denny is in fact looking for a windfall and is not being prejudiced by the fact that she worked part-time toward the end of her career is to look at Respondent's Appendix, page 4, which is the chart showing Ms. Denny's base pay for all the years that she worked. And you can see – I'll give you a chance to catch up with me. And this is Respondent's Appendix, page 4. If you look at that chart, you can see that 2001 was the last year that Ms. Denny worked full-time and received availability pay. The next year, she went part-time and her salary dropped. Now, this chart, by the way, is the full-time salary, which she would have earned. It's the GS, right? But for the years that she got availability pay, it includes that. So, for example, in 2001, she was at GS 13, Step 7, and she was getting $99,760. This is not strong enough, but something like $55. In 2002 – I'm sorry. That was her last year, right, getting the availability pay and working full-time. Then she switched in February of 2001 to part-time. She was still at GS 13, Step 7. The full-time salary for GS 13, Step 7 without availability pay was $79,828. Around 2004 – or 2005, actually – is the year that the full-time salary for her grade and step – with availability pay. But not by as much as it would have if you credited her for the availability pay. Right, but it did exceed it for the next three years. Which is why we're here, because that's why we're arguing about the high three. But my point is this. Your Honor, if she had retired in 2000 before that year that it exceeded it – if she had retired, let's say, in 2004 before it had exceeded it – then her high three would have been the years that included availability pay. That's the years that OPM would have used to determine her high three, because they were higher than what she was earning in the last three years when she was part-time. So they wouldn't have used those part-time years. She wasn't being punished for working – she worked so many years part-time that eventually her deemed full-time salary exceeded the full-time salary that included availability pay. If she got availability pay on top of the basic pay that she got as reflected in 2006, 2005, whatever this time period here, she would actually receive an annuity based on a salary, an annual salary that's higher than anything she ever got during her government employment. That's exactly right, Your Honor, exactly right. And again, if she had retired a few years earlier, then her high three would have included – would have been based on a salary rate that included availability pay. And so she wasn't – that really proves that she's not being punished for working part-time at the end of her career, because that would have included a few years of part-time work at the end of her career. But her high three just wouldn't have fallen during those part-time years. Well, I think her theory would be – I think that in calculating the high three, you have to add in the availability pay as – in other words, that she would have had a different high three. Right, that's her theory. But her theory is based on the idea that availability pay is automatic and that everyone that works full-time is automatically entitled to availability pay. This Court – I believe in Craven – this Court already explored that question and said availability pay is not automatic. And the statute itself, the language of the statute itself, and certainly the implementing regulations, make it clear that it's not automatic. It says that the individual has to be certified, which is what the Court said in Craven, and why it was not willing to impute availability pay to Mr. Craven retroactively. But the question is not ultimately, I think, whether it's automatic in the sense that absolutely under every condition everyone gets it, but rather whether it is basic pay such that it is something that is taken into account when you look to the annual rate of basic pay that would be payable for full-time service. Why isn't it that? It's included in basic pay if you're receiving it. But if you're not receiving, it's not. Ms. Denny basically is trying to be treated better than someone who worked full-time their entire career but didn't get availability pay during their high three. They wouldn't somehow have it thrown back in there when they weren't actually getting it. There's nothing in the statute that says, and if you're not getting it during your high three years, we'll throw it back in. So if a full-time person, if someone who worked full-time their entire career, and especially during their high three, worked full-time but didn't happen to be getting availability pay during those years for whatever reason, they wouldn't have it included in their basic pay for retirement purposes. Why shouldn't Ms. Denny somehow, because she was working part-time, have it assumed that if she was working full-time, she would have gotten availability pay? Well, the argument is that that's the way the statute is structured, that its annual rate of basic pay that would be payable. It's a hypothetical circumstance for full-time service. Now, if it were the case, let's suppose, and I understand that you don't agree, but if it were the case that availability pay was automatically given to anyone that works full-time and never given to anyone that works part-time, then this case would be easy. She would win, correct? Whether she received it or not, right? I would say it was only a much easier case if it was automatic. It would be like locality pay. Everybody gets locality pay as long as they live in that area. And so as long as she was living in that area, she would get locality pay. And that would be part of her annual rate of basic pay that would be payable for full-time service? I believe so, yeah. As opposed to the GS rate. Right. In other words, you'd add on to the GS rate. So you're not taking the position that basic, annual rate of basic pay is the GS rate? It's whatever is automatically payable. Individuals working full-time, every individual working full-time automatically gets X amount of dollars. Then that's the rate that's imputed to her. Sir, just taking you up for a second on this automatic. Just mechanically, how does this certification process work each year? I mean, at a certain point, does the supervisor and the employee make a certification for the upcoming fiscal year? Is that the way it works? That is the way it works. And so the certification says that the individual has been and is expected to continue to work and be available for the number of hours that's required by the statute. However, if that certification can be suspended in the middle of it, it appears that the individual actually isn't available and working the hours that are required by the statute. Excuse me. When is the fiscal year? Say it was October 1 through September 30, right? And assume that's the fiscal year. Does that mean sometime 60 days before that, the supervisor makes his or her certification? I'm not really sure exactly how much in advance. It definitely is for the year to come that they have been and are expected to continue to be. However, not only is there a provision for that certification to be suspended if, in fact, the individual isn't available and isn't performing, but there's also a voluntary opt-out where an individual can indicate to their supervisor, no, I don't expect to be available. How does it work for an employee who is just coming on duty, who's never worked, has come out of whatever, and it's his or her first job as a special investigator with the FBI. They start work on, we'll just pick October 1 to make it fit with the fiscal year. How does the certification work then? Because the supervisor can't say has been and is expected to. Would the supervisor in that situation just say is expected to? I believe so, and I remember, and I looked at this regulation yesterday, but I didn't bring it with me, for which I apologize. And I do remember that there was a separate regulation for an individual newly coming on duty, a new hire versus someone that had been receiving, or someone who hadn't been getting availability pay up until now, or a new hire versus someone that had already been getting availability pay, and it was a continuity. Oh yeah, actually, it says supervisory managerial certification initial. This certifies that over the next 12 months, I expect the criminal investigator on the attached list. So I think it just omits the has been and is expected to continue. But in either event, it certainly can be suspended if the individual, in fact, isn't available to do it. And certainly there are provisions for individuals to voluntarily... I'm just going to get a sense of kind of how the mechanics of the, quote, certification process, close quote, work. That's all. So basically, Your Honors, Ms. Denny is looking for something that, some benefit to be imputed to her by virtue of the fact that she worked part-time, that a full-time employee who was retiring after, and whose high three fell when that individual wasn't getting availability pay, would not get. So that there's no reason for Ms. Denny to be getting preferential treatment. There's nothing in the statute that requires that. And the way Ms. Denny was treated, as I think I illustrated using the respondent's name before, is she's not being punished for working part-time. She is just feeling the effect of the fact that during her high three, she was, in fact, not certified, not receiving availability pay. And that would be the same way that any, even a full-time criminal investigator would be treated. And nothing about 84-15, 84-15 was created, I think the Court understands, to require Ms. Denny's part-time salary at a higher grade, for example, to get her the benefit of what the full-time salary would be at that higher grade. And that's exactly what OPM did in this case. So they fulfilled the purpose of 84-15. Thank you, Your Honors. Thank you, Ms. Stern. Mr. Zwick, we'll give you a couple of minutes for rebuttal. I just have a couple of points I want to make. The Craven case that counsel referred to really isn't applicable here because the employee in Craven was not a law enforcement employee that was certified by his agency to be eligible for the AVP at all. That's sort of the circumstance that I was talking about earlier because that's what the statute is doing. It's saying if someone is, they may be doing law enforcement things and they may call law enforcement, but unless it's really 1811 type service, then they just can't make themselves eligible for AVP. And I think that's what the statute is talking about when it says received by law enforcement people pursuant to 5545A. Second, I was going back to the hypothetical that was suggested. Suppose we had the employee who works 30 years in her career never getting AVP, all full-time pay, and then in her last three years gets AVP. While she's still working full-time. Right. Is it a windfall for it to be calculated into her salary that way? If she had gotten a raise from a GS-10 to a GS-16. I guess they don't have GS-16s anymore. GS-15 in her last year, she'd get a huge bump up because of the high three, but whether it's a windfall or not, that's just the way the statute works. Exactly. It's just the way the statute works. And that's what we need to do here. We need to just do what the statute provides. I mean, in that hypothetical, she would have actually earned the GS-15 salary for those three years. And the problem is that even multiplying by the ramp-up factor here, she didn't actually get the availability pay. That's, it seems to me, the distinction. Well, I mean, I think what would make a difference, though, is if you consider these first 27 years as part-time work, because she's really, in 1811, who's supposed to be working 50 hours a week, and she's being allowed to work 40, you could treat with it that way. But the example you get where you just get promoted at the end, which a lot of people get promoted towards the end of their career, they end up having their salary based on a lot more than what it was for most of their career. The question about the certification, the fact of it is that all FHI agents are certified to work. You know, there's 15,000 of them out there, and they're all certified for AVP. It's only in just some temporary type circumstance that that would not only be not allowed but required. In our appendix, we do have some literature from the FBI about the AVP, and they say there that all agents qualify for overtime, and that is the fact of it. Okay. Thank you, Mr. Swick. Did you have one final thought? Well, what her pay would have been if she was full-time would include AVP. Okay. Thank you. All rise. The Honorable Court is adjourned until tomorrow morning at 10 o'clock a.m.